IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| RANDALL MATOR, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 08-0419 |
| MICHAEL J. ASTRUE Commissioner of Social Security, | ) ) ) ) ) | JUDGE McVERRY |
| Defendant | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

**I.     Introduction**

Now pending before the court are PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Document No. 8) and DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document No. 11). The motions have been fully briefed and are ripe for resolution.

Randall Mator (hereinafter "Plaintiff" or "Mator"), brought this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") which denied his applications for both disability insurance benefits ("DIB") Under Title II of the Social Security Act ("Act") and supplemental security income ("SSI") under Title XVI of the Act. 42 U.S.C.§§ 401-403 and 42 U.S.C.§§ 1381a.

**II.    Background**

Plaintiff was born on April 25, 1962 and is classified as a "younger age" individual pursuant to 20 C.F.R. § 404.1563, 416.963. Mator has a high school education and relevant past

1

work history as a welder and warehouse worker, which is characterized as requiring medium exertion. Plaintiff had acquired sufficient quarters of coverage to remain insured for DIB through June 30, 2007.

Plaintiff alleges disability as of November 25, 2003 due to lower back ailments relating to "three bad discs in [the] back and nerve pain." *R*. at 34. Mator has a history of back problems documented as early as 2002 relating to mild scoliosis and "mild end plate spurring in the upper thoracic spine," and mild disc narrowing in the lumbrosacral spine. *R*. at 112-113. His lower back pain was exacerbated in part from a slip and fall in an icy parking lot on January 28, 2003. *R*. at 121. Due to the fall, Plaintiff was admitted to the Forbes Regional Hospital emergency room, where he was treated and released the same day. *Id*. The record reflects that he has been examined by multiple physicians and other health professionals.

During his emergency room visit following his fall in 2003, Mator was examined by. Leonard Urbanski M.D. who noted that an MRI revealed "grade I spondylolisthesis of L5 on S1" and a "bilateral pars defect at L5." *R.* at 122. Dr. Urbanski diagnosed Mator with musculoskeletal low back pain with radicular left leg pain and instructed him to follow up with James Uselman, M.D. *Id.* He was given a cane to assist with ambulation.

Plaintiff's subsequent examination by Dr. Uselman on January 30, 2003 noted no significant changes in condition and supported the diagnosis of spondylolisthesis at the L5-S1 level. *R.* at 123. The examination also showed good strength in both lower extremities. *Id*. Dr. Uselman prescribed four weeks of physical therapy and a back brace, requiring a follow up appointment within one month. *Id.*

On February 18, 2003, Mator was admitted to the Alle-Kiski Medical Center with complaints of depression, and "suicidal ideation." *R.* at 136. He was examined the following

day by Surinder Bajwa, M.D. who noted Plaintiff's chronic back pain and concluded that he "appear[ed] to be in no acute distress" and "otherwise seem[ed] medically stable." *R.* at 133. On February 24, 2003, Plaintiff was discharged, denying any suicidal ideation. *R.* at 131. The clinical impression at that time was noted as recurrent major depressive disorder. *R.* at 132. There are no medical records for the period noted as February 2003 and December 2004.

Mator began a four week physical therapy session on December 7, 2004 which substantiated his decreased functional ability, decreased range of motion, decreased strength, and poor posture. *R.* at 164. The therapy sessions proved to be beneficial in the short term, but did not result in long term pain relief. *R.* at 159. After attending six of twelve prescribed physical therapy sessions, Plaintiff was discharged from the program and stated that he wished to pursue other avenues of pain relief. *Id.*

Mator was examined by Keith Goldstein M.D. on December 22, 2004 for the purpose of providing a report to the Bureau of Disability Determination. *R.* at 147. Dr. Goldstein's summary again noted spondylolisthesis and also mild arthritis/bursitis in Plaintiffs shoulders. *Id.* Dr. Goldstein also noted Plaintiff had well developed and muscular upper extremities and that he was not deemed a candidate for surgery regarding his back pain. *R.* at 149-151.

Mator was also examined by Dominic A. Kasony M.D. on May 9, 2005 for the purpose of providing a psychological disability evaluation report to the Bureau of Disability Determination. *R.* at 168. Dr. Kasony's report noted that Plaintiff's mental state dictated "slight restrictions in understanding and remembering short simple instructions," "moderate restrictions in understanding and remembering detailed instructions and carrying out the same," and "a slight restriction. . .in making judgment in simple work related decisions. *R.* at 175.

Plaintiff was also examined by Lloyd K. Richless M.D. on six[1] separate occasions in 2005 and 2007, each time noting negative straight leg raising tests. *R.* at 210, 208, 207, 205, 228, 229). Dr. Richless also corroborated the existence of grade 1 spondylolthesis. *R.* at 228, 229.

Lastly, plaintiff was also seen by Eugene A. Bonaroti M.D. for a neurosurgical consultation on February 2, 2007 who noted grade 1 spondylolisthesis and evidence of spina bifida and a positive straight leg raising test on the left at 30 degrees. *R.* at 212. He also recorded no motor, sensory, or reflex deficits. *Id.*

### B. Procedural History

Mator protectively filed applications for DIB under Title II of the Social Security Act ("SSA") as well as an application for SSI under Title XVI of the SSA. The claims were denied initially on May 19, 2005. He then filed a request for a hearing which took place on February 20, 2007. Plaintiff was represented by counsel at the hearing, which took place before Administrative Law Judge Elliot Bunce ("ALJ"). Plaintiff, as well as vocational expert Ms. Alina Kurtanic, testified at the hearing.

On March 28, 2007 the ALJ rendered a decision which was unfavorable to the Plaintiff under the five- step sequential analysis used to determine disability for the purpose of awarding SSI or DIB.[2] At step one, ALJ determined that Plaintiff was not engaged in substantial gainful activity. At step two, ALJ determined that Plaintiff suffered from the following severe impairments: "degenerative disc disease, with spondylolisthesis and evidence of spina bifida; depression; anxiety; and substance addiction, now in remission." *R.* at 20. At step three, ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or

---

[1] The examination dates are January 27, 2005, July 12, 2005, August 2, 2005, January 11, 2007, February 19, 2007, and March 22, 2007.
[2] The five step analysis set forth in 20 CFR 404.1520(b), 416.920(b) is applicable in claims for DIB and SSI, respectively.

4

exceeded the criteria of impairments set forth in Appendix 1 (20 CFR 404.1520(d), 404.1525,404.1526, 416.920(d),416.925, 416.926). At step four, ALJ concluded that the Plaintiff did not have the residual functional capacity ("RFC") to return to his previous lines of work as a welder or warehouse worker. However, at step 5, ALJ found that the Plaintiff has the RFC to perform work that does not require exertion above the sedentary level, and therefore did not qualify for benefits. *R.* at 20-21. ALJ's decision became the final decision of the Commissioner on February 22, 2008, when the Appeals Council denied Plaintiff's request to review ALJ's decision. *R* at 5.

### III. Legal Analysis

#### A. Standard of Review

The SSA limits judicial review of disability claims to the Commissioners final decision. 42 U.S.C. § 405(g). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. §405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The Supreme Court has defined "Substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It consists of more than a scintilla of evidence, but less than a preponderance. *Stunkard v. Secretary of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. § 404.1520 and 416.920 (1995). This process requires the Commissioner, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she

can perform other work. *See* 42 U.S.C. § 404.1520; *Burnett v. Commissioner of Soc. Sec.*, 220 F.3d 112, 118-119 (3d Cir. 2000) (*quoting Plummer v. Apfel,* 186 F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is "some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423(d)(1)(1982).

A basis for impairment may be determined in the following two ways:

> (1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983).; *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or,
>
> (2) In the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy. . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. §423(d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Stunkard*, 842 F.2d at 59; *Kangas* 823 F.2d at 777; *Doak v. Heckler,* 709 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

**B.     Discussion**

Mator primarily contends that the ALJ erred in his credibility determinations regarding the intensity, persistence, and limiting effects of the reported symptoms. *Pl. Brief,* Doc. 9, p. 4. Furthermore, Plaintiff asserts that the ALJ did not properly evaluate the opinions of his treating healthcare professionals, that the ALJ erred in determining that Mator does not have an impairment or combination of impairments that meets or medically equals the impairments in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, and that the ALJ's characterization of Plaintiff's RFC was not supported by substantial evidence.

The Commissioner contends that both the ALJ's credibility determination as well as his determination that the Plaintiff retains the capacity to perform a modified range of sedentary work were, in fact, supported by substantial evidence and thus should be affirmed.

The Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny Plaintiff's motion for summary judgment.  As set forth in the SSA and applicable case law, this Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler,* 806 F.2d 1185, 1190 (3d. Cir. 1986), *Cert. denied.*, 482 U.S. 905 (1987).  The court must simply review the findings and conclusions of the ALJ to determine whether or not they are supported by substantial evidence.  42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir 1999).  The Court turns now to the specific arguments raised by the Plaintiff.

1. *Credibility Determination*

Plaintiff argues that ALJ did not "build a logical bridge between the facts and his conclusions" regarding the "excess pain evaluation" of the Plaintiff. The Court does not agree. While plaintiff's allegations of pain were somewhat consistent, "It is well-established that the ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Brown v. Schweiker*, 562 F. Supp. 284, 287 (E.D. Pa. 1983). Furthermore, a claimant's subjective complaints of pain will not alone establish that he or she is disabled. 20 C.F.R. § 404.1529(a).

ALJ considered the Plaintiff's attendance at physical therapy, his MRI results of January 2005 and February 2007, the examination results of Dr. Richless, a nerve study done on the Plaintiff's left leg in 2005, the examination of Dr. Bonaroti, and the reports of Dr. Uselman in determining that the Plaintiff's spinal condition reasonably may be expected to cause pain and limitation in his range of motion. *R.* at 22-23. ALJ also analyzed the mental examination performed by Dr. Kasony.

Plaintiff avers that his statements regarding the nature and extent of his symptoms of pain are clearly supported by objective medical evidence. In such situations, ALJ's analysis consists of the following:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms. When such a medically determinable impairment has been shown, the claimant's symptoms will be evaluated with regard to their intensity, persistence and functionally limiting effects they have on the claimant's ability to do basic work activities.

*Hirschfeld v. Apfel*, 2000 U.S. Dist. LEXIS 20502, 23 (E.D. Pa. 2000). While an analysis of plaintiff's objective medical evidence clearly evidences the conditions from which he suffers, it does not concretely establish the intensity, persistence or functionally limiting effects of the pain itself. The ALJ must then make a finding which determines the Plaintiff's credibility based on the entirety of the case record. *Id*. at 24. The painful condition of Mator is well documented, however, the ALJ correctly discerned that the intensity, persistence, and functionally limiting effects of the pain were not established by objective medical evidence and he conducted a proper credibility analysis supported by substantial evidence.

The ALJ did not ignore Plaintiff's claims of pain, rather he considered those statements along with the examinations of Doctors Goldstein, Richless, Bonaroti along with the objective medical tests which were performed. ALJ noted that Dr. Goldstein's physical examination reflected a well developed upper body and healing marks and grease stains on both of his hands. *R*. at 22. ALJ also noted that "Dr. Bonarotti found no motor, sensory, or reflex deficits." *R*. at 23. ALJ determined that while Plaintiff's condition "reasonably may be expected to cause pain and limitation in his range of motion . . . no examining source has stated that the claimant is disabled." *R*. at 23. In sum, ALJ's credibility determination was supported by substantial evidence.

    2.    *Step 3 Determination*

Plaintiff avers that ALJ did not properly take into account the cumulative effects of his impairments when determining whether his severe impairments were equivalent to any of a number of listed impairments. *Pl. Brief,* Doc. 9, p. 16. In order to make a valid step three determination regarding a combination of impairments, the ALJ "is required to

set forth the reasons for the decision, and specifically explain why a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments." *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 493-494 (W.D. Pa. 2005). ALJ adequately did so with regard to the Plaintiff.

In determining the severity of Mator's physical disorder, ALJ assessed his degenerative disk disease by the criteria of §1, Musculoskeletal System, Appendix 1 and found that the impairments did "not meet the specific findings required by the section." *R.* at 20. With respect to his anxiety and substance addiction, the ALJ analyzed these impairments against §12.04[3], §12.06[4], and §12.09.[5] *Id.* ALJ noted Plaintiff's hospitalization for depression and subsequent release in 2003, and also noted that he "has not been treated at an emergency room for an exacerbation of a mental impairment during the relevant period." *Id.* ALJ also considered that Plaintiff was treated at an outpatient facility for cocaine dependency. *Id.* Also considered was the examination of Dr. Kasony, who noted that Mator's thought processes were in order, "noting some sarcasm, anxiety, depression and sleep disturbance." *Id.* ALJ then took the combination of the abovementioned disorders, viewed them broadly in one category as "mental impairments," and weighted them against the relevant listed criteria. *R.* at 20. The ALJ's analysis was thus proper in determining that Plaintiff had no restriction on his daily living attributable to a mental impairment. ALJ noted that the Plaintiff's limitations were primarily physical. *R.* at 21. In considering both Mator's mental and physical impairments as a whole, the ALJ appropriately set an RFC, and noted that the lack of repeated episodes of decompensation over the relevant period "attests to a lack of

---

[3] Affective Disorders
[4] Anxiety Related Disorders
[5] Substance Addition Disorders

10

disabling severity [of impairments]." *Id.* Therefore, ALJ properly determined that Mator did not suffer from an impairment or a combination of impairments which warrants a finding of disability.

Plaintiff cites to *Burnett v. Comm'n of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. N.J. 2000) to assert that the ALJ's step three analysis was conclusory and thus a remand is warranted. ALJ's analysis in itself was not outside the scope of meaningful judicial review as was the case in *Burnett* in which the ALJ's entire step 3 analysis consisted of a single sentence. *Id.* at 119. As explained in the preceding analysis, ALJ adequately analyzed the impairments and combination of impairments of Plaintiff. Regardless, the findings of the ALJ are supported by substantial evidence, and "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999). ALJ's Step 3 determinations were therefore rendered correctly.

      3.     *Residual Functional Capacity (RFC)*

To determine disability, the ALJ must assess the claimant's RFC in the fourth and fifth steps of the sequential evaluation process under 20 C.F.R. §404.1520. The RFC is an assessment of an individual's ability to perform sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p (1). Plaintiff avers that ALJ failed to provide sufficient rationale in support of his assessed limitations. *Pl. Brief,* Doc. 9, p. 23.

The ALJ determined that Plaintiff's RFC reflected the ability to "perform work that does not require exertion above the sedentary level" which entailed "repetitious tasks, with one- or two-step instructions." *R.* at 21.

ALJ accepted the Plaintiff's contentions of depression and anxiety, as they were corroborated by Dr. Kasony's later report. *R.* 168-176. Dr. Goldstein's report listed the following limitations: 1 to 2 hours walking per eight hour day; 8 hours of sitting with alternating standing at his option; and unlimited pushing and pulling functioning; occasional bending, stooping, kneeling, and crouching. *R.* at 154-155. ALJ found that the restrictions set forth by Dr. Goldstein "essentially put the claimant in the sedentary exertional range." *R.* at 22. The Court finds that there is substantial evidence to support such an assertion with regard to Plaintiff's RFC.

The vocational expert also testified to several jobs that Mator would be able to perform given his limited RFC, which included all of the limitations set forth by Dr. Goldstein as well as the limitations of "simple, routine repetitive tasks with one or two step instructions," among others, derived from the examination of Dr. Kasony. The parties dispute whether the hypothetical scenarios considered by the vocational expert should have included additional limitations. ALJ posed two nearly identical hypotheticals; one with Plaintiff able to perform work at the light exertional level, and one where his capacity was limited to the sedentary range. In these hypotheticals, the vocational expert, at both the light and sedentary exertional levels, was asked to consider:

> An individual of the claimant's age, education, and work history, who is able to perform work. . . that requires no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling; that consists of no more than simple routine repetitious tasks with one or two step instructions; that does not include strict production quotas defined as the requirement to produce a specified number of units of work in a specified

> period of time; that requires no more than occasional contact with co-
> workers or supervisors, or any contact with the public.

*R.* at 262. In his second hypothetical using the sedentary range, ALJ added the additional criteria of allowing Plaintiff to alternate between sitting and standing. *R.* at 263. The vocational expert then considered the addition of an ambulatory device to the same scenario. *R.* at 264. The hypothetical situations posed by ALJ reasonably encompass all of the Mator's limitations which were supported by the record. The Court finds that ALJ sufficiently explained the rationale for his RFC and thus said assessment was not in error, and was supported by substantial evidence.

## IV. Conclusion

It is undeniable that Mator has a number of impairments, and this Court is sympathetic and aware of the challenges which he faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the findings of the ALJ, as his conclusion that Plaintiff is not disabled within the meaning of the SSA as supported by substantial evidence.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by the Plaintiff

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDALL MATOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 08-0419 |
| | ) | |
| MICHAEL J. ASTRUE | ) | JUDGE McVERRY |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant | ) | |

## ORDER OF COURT

AND NOW, this 12th day of March, 2009, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1. Plaintiff's MOTION FOR SUMMARY JUDGMENT (Document No. 8) is **DENIED.**

2. Defendant's MOTION FOR SUMMARY JUDGMENT (Document No. 10) is **GRANTED**.

3. The Clerk of Court shall docket this case closed.

BY THE COURT:

/s/ Terrence F. McVerry
United States District Court Judge

cc: Christy Wiegand
Email: Christy.weigrand@usdoj.gov

David Harr
Email: Dharresq@aol.com